UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

HOLDING COMPANY OF THE
VILLAGES, INC.,

    Plaintiff,

v.

Case No: 5:16-cv-348-OC-30PRL

VILLAGES ROOFING AND
CONSTRUCTION, INC., and
VILLAGES CONSTRUCTION, INC.,

    Defendants.

_____/

## CONSENT FINAL JUDGMENT AND PERMANENT INJUNCTION

This matter comes before the Court on the Complaint filed by Plaintiff, Holding Company of The Villages, Inc. ("Holding Company"). The Court, having reviewed the record and being otherwise duly advised in the premises, hereby finds and orders as follows:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Holding Company filed its Complaint in this action on May 18, 2016, alleging that Defendants, Villages Roofing and Construction, Inc., and Villages Construction, Inc.: (i) infringed Holding Company's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (ii) used false designations of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(d); (iii) committed trademark dilution under 15 U.S.C. § 1125(c); (iv) infringed Plaintiff's common law trademark rights, infringement and engaged in common law unfair competition; (v) committed trademark dilution under Fla. Stat. §

495.151; and (vi), in the case of Defendant Villages Roofing & Construction, Inc., violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

2. The parties agree that Holding Company is a nationally-known supplier of high quality residential retirement homes and accompanying real estate construction and development services located in Lake, Sumter, and Marion Counties, Florida. Holding Company promotes and sells its residential real estate under the mark THE VILLAGES, and stylized versions thereof, throughout the United States and internationally.

3. The parties acknowledge that Holding Company owns rights in a family of trademarks and service marks that consist in whole or in part of the mark THE VILLAGES for use in connection with a variety of goods and services, including residential real estate construction and development.

4. Plaintiff's trademark rights relating to construction services are evidenced by several federal trademark registrations, including:

| Mark | Reg. No. | Registration Date | Good/Services | Date of First Use |
|---|---|---|---|---|
| THE VILLAGES | 2,614,700 (Incontestable) | 9/3/2002 | IC 37: Residential retirement home real estate construction and development | 7/1/1992 |
| The Villages | 4,468,815 | 1/21/2014 | IC 37: Building construction services; Real estate development services in the field of retirement communities | 7/1/1992 |
| THE VILLAGES | 2,339,401 | | IC 36: Real estate brokerage of residential housing and resale of residential housing, real estate investment, real estate management for others; insurance | 7/1/1992 |

| | | | consultation, administration and brokerage for life, health, fire, casualty and property; banking services | |
|---|---|---|---|---|
| THE VILLAGES | 3,915,348 | | IC 36: real estate brokerage of residential housing and resale of residential housing, real estate investment, real estate management for others and real estate appraisal; insurance consultation, administration and brokerage for life, health, fire, casualty and property; banking services | 7/1/1992 |

5. The foregoing trademark registrations are presumed valid and subsisting in law and serve as evidence that Holding Company and its affiliated companies have used THE VILLAGES mark for real estate brokerage of residential housing and resale of residential housing and residential retirement home real estate construction and development, among other services, since at least as early as July 1992.

6. The parties do not dispute that the declaration required by 15 U.S.C. § 1065(3) for Registration No. 2,614,700 was filed with the United States Patent and Trademark Office on March 3, 2008, and accepted on March 20, 2008, thereby rendering Registration No. 2,614,700 for THE VILLAGES incontestable pursuant to 15 U.S.C. § 1065. As an incontestable mark, the registration is conclusive evidence of the validity of Holding Company's mark, and of Holding Company's right to use the registered mark in commerce. *See Marco's Franchising, LLC v.*

*Marco's Italian Express, Inc.*, No. 8:06-cv-670-T17-TGW, 2007 WL 2028845, at *4 (M.D. Fla. July 9, 2007).

7. The parties acknowledge and agree that The Villages® community began as a development on previously undeveloped rural land that had never been known by the name THE VILLAGES.

8. Defendants do not dispute that since its formation The Villages® community has been remarkably successful, having grown to more than 110,000 residents today, and having been repeatedly recognized as one of the fastest growing planned communities in the country.

9. Defendants do not dispute that due to its success and expansion, the U.S. Postal Service recognizes "The Villages" as an address, and the U.S. Census Bureau has designated The Villages® community as a census designated place.

10. Defendants do not dispute that any present day geographic connotation of the mark is directly attributable to the growth and success of the residential community operated by Holding Company and its predecessors in interest.

11. It is also undisputed that Holding Company and its affiliates have invested in substantial advertising using the mark THE VILLAGES in connection with construction and real estate services, including multiple billboards on interstate highways, print advertising in national publications, radio advertising in multiple markets, television advertising, and hosting of nationally-televised golf tournaments on its properties.

12. For the purposes of this action, Defendants concede that the success of The Villages® Community, together with the heavy investing in advertising and promotion of Plaintiff's mark, are sufficient to support a finding that THE VILLAGES mark is famous within the meaning of the Lanham Act and the Florida anti-dilution statutes.

13. Defendants do not dispute that, to the extent THE VILLAGES mark has any geographic connotation, that connotation is a result of the success of the community that was created by the developer.

14. Because the real estate development established by Holding Company's predecessor in interest is what made the term THE VILLAGES famous, Holding Company should not be punished through the denial of trademark rights due to the fame resulting from its own success and investment. *See Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1538 (S.D. Tex. 1996) *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998) ("Furthermore, if there is any geographic connotation to [the mark], such meaning has developed over time since the creation of the . . . resort and is directly attributable to the growth and success of the resort.").; *see also Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 807-08 (Tex. App. 2001) ("Because the mark 'Horseshoe Bay' is an arbitrary mark, coined by [the developer] and was not in prior use at the geographic site, we conclude that the district court did not err in resolving that the mark 'Horseshoe Bay' is not geographically descriptive.") (citations omitted).

15. As an incontestable registration, its validity and enforceability cannot be challenged on the basis that it is descriptive, geographically or otherwise. *See* 15 U.S.C. § 1065 (limiting the manner in which a mark may be challenged once it is incontestable); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985) ("Mere descriptiveness is not recognized . . . as a basis for challenging an incontestable mark.").

16. Under Eleventh Circuit precedent, incontestability of a registration weighs in favor of a finding of a strong trademark. *Dieter v. B & H Indus. of Sw. Florida, Inc.*, 880 F.2d

322, 329 (11th Cir. 1989) ("Because Dieter's mark is incontestable, then it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark.").

17. Holding Company's mark, THE VILLAGES, has therefore been shown to be a distinctive indicator of the source of real estate brokerage of residential housing and resale of residential housing and residential retirement home real estate construction and development.

18. To the extent Holding Company's mark, THE VILLAGES, may have previously had a descriptive quality, such mark gained acquired distinctiveness as is evidenced by its incontestable registration. *See Dieter*, 880 F.2d at 328 ("Once a mark has achieved 'incontestable' status, its validity cannot be challenged on the grounds that it is merely descriptive, even if the challenger can show that the mark was improperly registered initially.").

19. The parties agree that Defendants' use of VILLAGES ROOFING AND CONSTRUCTION and VILLAGES CONSTRUCTION began in 2012.

20. The parties further agree that Defendants lacked Holding Company's consent or permission to use THE VILLAGES marks, or any other confusingly similar mark or term, in connection with their professional services.

21. The terms used by Defendants were VILLAGES CONSTRUCTION and VILLAGES ROOFING AND CONSTRUCTION, and the following logos and trade names incorporating those terms:



22. The parties acknowledge that Defendants have ceased using both of these business names.

23. On their face, VILLAGES ROOFING AND CONSTRUCTION and VILLAGES CONSTRUCTION merely add the generic terms CONSTRUCTION and ROOFING AND CONSTRUCTION to Plaintiff's distinctive mark, and drop the article THE.

24. The addition of generic terms to another's trademark is generally insufficient to cure any likelihood of confusion with that trademark. *See HealthONE of Denver, Inc. v. UnitedHealth Group, Inc.*, 872 F. Supp. 2d 1154, 1176 (D. Colo. 2012) ("[N]umerous courts . . . have found marks adding just one word to another's mark to be sufficiently similar to sustain a finding of likelihood of confusion.").

25. The common meaning of construction and roofing are identical or closely related to "construction" services recited in Plaintiff's incontestable federal registrations.

26. Defendants marketed their services under their business names to residents of The Villages® community as well as to other potential customers in their geographic area.

27. Holding Company contends that there has been actual confusion in the market for roofing services offered under the previous business name, and for the purposes of this consent judgment, Defendants do not dispute that contention.

28. The similarity of the marks, the similarity of the services, the strength of Holding Company's THE VILLAGES Marks, and the uncontested existence of actual confusion are sufficient for this Court to enter a finding that VILLAGES ROOFING AND CONSTRUCTION and VILLAGES CONSTRUCTION are confusingly similar to Holding Company's THE VILLAGES Marks.

29. For the purposes of this consent judgment, the Defendants do not dispute that unauthorized use by Defendants of confusingly similar marks has irreparably harmed Holding Company, including by harming the goodwill associated with Holding Company's THE VILLAGES Marks and, to the extent any goods or services offered by Defendants are distinguished from those offered by Holding Company and its affiliates, by diluting the distinctive quality of those marks.

30. Defendants' unauthorized use of their respective names and marks as alleged in the Complaint and conceded herein constituted infringement in violation of 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A); false designation of origin in violation of 15 U.S.C. § 1125(d); and common law trademark infringement and unfair competition.

31. Given that Defendants do not dispute the fame of Plaintiff's THE VILLAGES marks for the purposes of this consent judgment, to the extent any of the services offered by Defendants is distinguishable from the scope of services protected under Plaintiff's trademark rights, the use of Defendants' marks in connection with those services, as alleged in the Complaint and confirmed by the parties, diluted the distinctive nature of Plaintiff's famous mark in violation of trademark dilution under 15 U.S.C. § 1125(c) and Fla. Stat. § 495.151.

32. The parties agree that Defendants continued or future use of marks incorporating VILLAGES would harm Holding Company in a manner that cannot be fully cured by an award of monetary damages.

33. The parties do not dispute that a prohibition on Defendants against future use of confusingly similar marks will not harm Defendants as Defendants have no right to use infringing marks, and in any event, the parties concede that have ceased using the marks at issue.

34. Such a prohibition will not harm the public, which has an interest in being able to readily distinguish between providers of goods and services based on their trade names and trademarks.

35. Defendant Villages Roofing and Construction also used the domain name <villagesroofing.com>.

36. Defendants do not dispute that prior to Defendants' registration of <villagesroofing.com>, Plaintiff had been using its domain name <thevillages.com> in commerce in connection with its website promoting its own construction and other services and has acquired common law trademark rights in that domain name.

37. For the same reasons cited above, <villagesroofing.com> is confusingly similar to Plaintiff's pre-existing domain name <thevillages.com>.

38. Defendants concede that they knew of The Villages® community and its domain name <thevillages.com> prior to registering their domain name <villagesroofing.com> and used that domain for commercial purposes in connection with promoting their roofing and construction services.

39. For the purposes of this consent judgment, Defendants do not contest that the foregoing concessions are sufficient for this Court to find that registration of the domain name <villagesroofing.com> was, therefore, in bad faith as set forth in the Anticybersquatting Protection Act. *See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1347-48 (S.D. Fla. 2001).

40. The parties do not dispute that Defendants' use of the domain name <villagesroofing.com> has harmed Plaintiff by eroding the goodwill associated with its marks.

41. Defendants' registration of the domain name <villagesroofing.com> therefore constitutes cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

42. In "ordinary trademark infringement actions . . . complete injunctions against the infringing party are the order of the day." *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1336 (11th Cir. 1996). "Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008). Here, the likelihood of confusion constitutes a showing of irreparable injury. *See Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. App'x 180, 191 (11th Cir. 2005).

43. Given the conclusions above, concessions of the parties, Plaintiff's federal trademark registrations, and the findings of trademark infringement, trademark dilution, and cybersquatting herein, a permanent injunction is appropriate in this case. An award of monetary damages will not cure the irreparable injury to Holding Company if Defendants are permitted to recommence the use of VILLAGES ROOFING & CONSTRUCTION, VILLAGES CONSTRUCTION, or substantially similar terms, thereby further damaging the goodwill and distinctive character of Holding Company's THE VILLAGES Marks. The threatened continued injury to Holding Company outweighs whatever damage the injunction may cause the Defendants, because Defendants have no legitimate interest in the continued use of service marks confusingly similar to Holding Company's. Finally, an injunction would serve the public

interest, which is "served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001).

NOW, THEREFORE, by stipulation and agreement of all parties, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. The Court has personal jurisdiction over Holding Company and Defendants.

2. The Court has subject matter jurisdiction over the claims asserted in this action.

3. Defendants and Defendants' agents, servants, employees, attorneys, and any other persons or entities in active concert or participation with Defendants who receive notice of this Judgment, are hereinafter permanently restrained and enjoined from:

   a. Using or authorizing others to use any trade name, trademark, service mark, email address, meta tag, hidden website text, domain name, social media identifier or search engine keyword that consists in whole or in part of any of Holding Company's THE VILLAGES Marks, or any confusingly similar term, mark, or name including, without limitation, the term VILLAGES for use in connection with any real estate-related, roofing related, or construction-related goods or services;

   b. Registering, seeking to register, or using any trademark, service mark, social media identifier, or domain name which incorporates any of Holding Company's THE VILLAGES Marks or any confusingly similar term, mark, or name including, without limitation, the term VILLAGES for any real estate-related, roofing-related or construction-related goods or services;

   c. Inducing or contributing to any third-party effort to use any trade name, trademark, service mark, email address, meta tag, hidden website text, domain name, social media identifier or search engine keyword that consists in whole or in part of any

of Holding Company's THE VILLAGES Marks, or any confusingly similar term, mark, or name including, without limitation, the term VILLAGES for use in connection with any real estate-related, roofing related, or construction-related goods or services or in an effort to imply that any third-party's goods or services are sponsored or endorsed by, associated, or affiliated with Holding Company or The Villages® community.

4. Pursuant to Section 36 of the Trademark Act of 1946, 15 U.S.C. § 1118, Defendants must deliver to Holding Company for destruction within thirty (30) business days of the date of this Final Judgment all advertising and promotional materials, signs, business cards, and products that bear Holding Company's THE VILLAGES Marks or any confusingly similar term, mark, or name including, without limitation VILLAGES ROOFING, VILLAGES CONSTRUCTION, or VILLAGES ROOFING AND CONSTRUCTION, VILLAGES, any stylized version of any of the foregoing, or any logo incorporating any of the foregoing.

5. Defendants shall transfer registration of the domain name <villagesroofing.com> to Holding Company.

6. Each party shall bear its own attorneys' fees and costs incurred in connection with this matter.

7. The Court retains jurisdiction over this matter to enter further orders that are necessary to enforce the terms of this judgment.

SO ORDERED this __13__ day of __April__, 2017.

_____
The Honorable James S. Moody, Jr.
United States District Judge